Next matter is Billbili v. a lot of folks. Klein and Vancouver City. Good morning. May it please the court. My name is Tommy. Every time someone does this, don't start your time yet, but I have this image of somebody who will pull the microphone down and then spread it back and whack them. That has not happened. Hopefully not, no. You'll probably get the other team, unless there's that fear I see. Will it happen to you? It will. Okay. The one I remember is like Judge Becker, what he would say is, just crank it up just a little bit. You're short like me, don't worry about it. Just crank it up, crank it down. So we hadn't used the cranking desk for about five years and we decided to crank it up a bit. I'll do my best. Good morning. May it please this court. My name is Tommy Ann Gibney. I'm an attorney with the law firm of Andresenberger and I have the privilege this morning in arguing on behalf of the appellants in this case. Excuse me, this is, even though it started out in a kind of a, in a formal vein, it's an incredibly tragic case as I'm sure everybody here appreciates. That is true. Where is the constitutional violation number one? And number two, it seems to me that, I'm not sure if people have to brief or not, but some liberties were taken with the facts and brief writing. There's some mentions here about the erratic behavior and I noticed every time I saw erratic, when I see something like that in a brief, I look to see the site of the appendix. And I didn't see, there were two or three mentions in the brief of the erratic driving and they weren't followed by the site of the appendix and it made me a little bit suspicious. Flipped the flags one off. I thought, well, maybe there's nothing on the record to suggest there wasn't any erratic behavior. And then it turns out, in fact, there wasn't anything to suggest erratic behavior. The officer had followed Klein for, I guess, a mile, a little over a mile. He stayed within the lane. He was speeding, but there was nothing to suggest that he was inebriated to the extent that he couldn't stay in the lane or control of the car. He was speeding. So I want to minimize the danger, obviously. We see it here, what it would mean. But to the officer following Klein, there's nothing to suggest to the officer from observing Klein's behavior that he's dealing with anything other than somebody who's speeding. There's nothing on their face value to suggest that... The person was inebriated. Yeah, that he's drunk or driving erratically, as you say in your brief. That is correct. Without any foundation whatsoever. That is correct. Looked right through the driving and then once he stops, I mean, did the person, was the person sort of falling over himself? He pulled out his badge and he saw that he was a police officer and a superior. Maybe he was negligent on his part. Maybe he didn't follow certain protocols. But where is the affirmative act that gives you a constitutional violation? The court is correct that there was no erratic driving in the sense of weaving or lane changing on behalf of the defendant Klein. It was a speeding traffic stop. It was a moving violation which initiated the traffic stop. The officer in this case who made the traffic stop, it is our contention that he had a deliberate indifference in the manner that he conducted the traffic stop within the context of the time of the stop, the nature of the stop, and the location of the stop. So to get deliberate indifference which is a very high threshold, I mean, when you look at cases like the Cheney, I mean, and Bright in our circuit, you've got some very tragic circumstances with a very high threshold with regard to the police officer. How does what you have here in any way rise to that level? What we have is an officer, a young rookie officer who's been on the job for three years who is put in a position according to our case law of making what I would characterize as hurried decision making, hurried deliberation which requires us to apply the middle level of scrutiny to his decision. I would argue that in theory, three years on the job, three years of training with the other officers and police academy would have given him years to make an informed decision as to the proper way to make a police stop. But what happens to me, the real world is that when police officers are going almost anywhere, at least they used to be in this country, and they were stopped for speeding and they flashed their badge oftentimes given this professional courtesy, slow down, cut it out, get out of here. Here he would have to know something more than the person was speeding. You would have to know this person was drunk or significantly inebriated and that you should take the next step. What do you have in the record that would have given an indication to the officer here that Klein was significantly inebriated and that this officer had to take the next step and refused to do so recklessly and indifferently? The record did not support the district court's conclusions which were based virtually entirely on the deposition testimony of Craig, which the district court accepted wholesale. In opposing the motions for summary judgment, the plaintiffs in this matter brought forth replete examples of testimony from other, not only parties in the case, but fact witnesses to the case with respect to the defendant Klein's propensity for bad acts, propensity for drug use, propensity for alcohol consumption, prior DUI... This police officer is supposed to know all that, Craig? Your Honor, it is... Did the record show he did know this? No. What he's testified at deposition, and he was the only one who testified at deposition, that he had no idea what was going on. It was, if you will, a see-no-evil defense on his part. But he's also the only one in this case who had any incentive not to know anything. In relation to prior DUI, the hearing for that had not yet... That was a very recent incident. Yes, sir. He really only had, even assuming the accuracy of the DUI allegation, that's it for DUI. The guy's personal life was a mess. Yes, sir. It sounds like he himself was a mess. His professional life was a mess. Indeed. But in terms of his vehicular behavior, there's really nothing there except for one prior unsubstantiated DUI. Well, only with respect to a DUI, Your Honor. But there were multiple motor vehicle violations allowing driving an uninsured vehicle as a police officer, arriving on the job under the influence. And the purpose... How about a... Well, the central issue... driving an uninsured vehicle that has nothing to do with his rubber when he's operating a car. Individually, absolutely not, Your Honor. As an individual incident, it does not. But the purpose of this appeal for all of the words that have been spoken in this case, all of the pieces of paper that have been filed in this case, what this appeal comes down to was whether or not the district court erred when it made findings of fact, determinations of credibility amongst and between the various witnesses whose testimony was offered in opposition of the motion and a weighing of the evidence, which allowed the district court to base its decision wholly on that of young officer defendant, William Craig, in this case. Let's assume that Craig was lying through his teeth during the deposition. What you then have is Craig, who knows that Cline's a mess and his personal life is a mess and he's not someone who should be a police officer. He's following him at 2 o'clock on a Saturday morning. He's going 20 miles an hour with a speed limit. But he observes him for a mile or so. He's not operating the car erratically. He's not veering outside the lane. He's staying within his lane. And you've got a high burden. I understand we're at a summary judgment, but you've got a high burden. Why wouldn't it be just as reasonable if not more reasonable for Craig to conclude that Cline is a wreck but wherever he's going tonight, he's in a big hurry. But I don't see anything here to suggest to me that I need to take this thing any further. I've stopped him. I've warned him. And let me get back out and get back at patrol. If that was what happened and this is what it was and he lied about his knowledge, where would the constitutional violation be in that kind of note? If Craig had properly completed the traffic stop and discharged his obligation with respect to his ministerial duties, that is, duties for which he has no discretion, he is a sworn officer,  the law, he doesn't complete the traffic stop. He doesn't get any closer than he should. But that's what you're saying. Because one thing that struck me is looking on the record, for example, there's no expert to say that in the normal person this would be the impact of the water coordination of a black alcohol of what was it, zero? 0.15. 0.15, which is not, what is it, 0.1 or 0.75? 0.1. 0.1. It's not that high. There's not that much over the limit. It's not. And all of the testimony from the officers in this case, supervisors and drinking buddies of Klein's who knew him said he could hold his liquor. And he himself said he could. All right, so how does that help? What would be, what is it to suggest that had um, you know, I keep confusing Craig and Klein. Had Craig gone up and conducted the stop, even had him do the toe-to-toe thing and laying eye-to-eye hand coordination, isn't this pure speculation to suggest that he would have gotten information from that that would have led him to believe that this guy is in no shape to operate that car? Because everything that he could determine before then is that the guy is in shape to operate the car. It's a likely influence, Your Honor, that if he had properly discharged his duties as an officer that night, he would have gotten close enough to Klein to make observations to allow him to conclude. What are the observations he would have made? The smell of alcohol in the breath, visual appearance of alcohol consumption. But by 30 feet away, we don't get there. I know that. I know that. We don't get there if we're 30 feet away. We can't make those observations at 2 in the morning. As...  I can dispute, Your Honor, and that's one of the issues that we raise on the summary judgment, on the appeal of the summary judgment grant. By couching this accident as having occurred at 1 in the morning, the district court accepted Craig's guess. Did the accident occur at 2? The accident occurred at 2, and Craig's deposition testimony was that he had no idea. He guessed it was 1, but when pressed in testimony, and that's in the appellate record, he didn't know. And so the district court accepted Craig's guess of 1 a.m., which stretches the time out significantly, because Klein, who was deposed in jail over the course of two days after having been convicted of vehicular homicide and at that point had nothing to save, no incentive to lie, testified that he drove 8 miles from the bar to the point of impact, and he drove 5 1⁄2 miles approximately from the point of the traffic stop with Officer Craig to the point of impact. This wasn't an hour. The 1-5 in the black hole, was that extrapolated back to the time of the stop or was that at the time of the accident? That was at the time of the accident, which was 5 miles after the stop. So, you know, the inference would be, Your Honor, that it was purely a few minutes before the accident occurred. In the case of Craig, then, how do you... I'm still lost. How in the world with this very difficult standard can you say that Craig, a rookie, who didn't have any indication that the person was inebriated or didn't follow certain protocols perhaps to do that, was recklessly indifferent to the point where it is a constitutional violation? I mean, is there any possible way you can prevail? The deliberate indifference that was exhibited by Craig that night is defined by the county of Sacramento versus Lewis. The courts have instructed us that these have to be evaluated on a case-by-case basis. On the one hand, we have Officer Craig... But you have to do it in the context of very difficult standards. Yes, sir. In the context of the standards, in the context of the facts that night, in the larger picture of what Craig knew and should have known or could possibly have known. It's inconceivable that he was the only one of 23 officers in a small department and had been there for three years, not three days on the job or three weeks, but three years, had not heard any rumors or noticed any of the prioritizations  was suspended. Let's assume for the moment that he knew that Klein was a problem. But how do you get that from there to this traffic stop or speeding to reckless indifference, an affirmative act  indifference to the point where you don't care what happens thereafter? What evidence do you possibly have? The inference, Your Honor, that can be determined from Craig's own testimony that he thought it would be a problem for him if he ticketed a superior officer where Jankowski, the public safety director, said in his deposition testimony it was a violation. And that's a fact. But where is the evidence that he thought that this person was in such an unstable condition that he should not let him go forward? He didn't ever go down that road, Your Honor. So that piece of evidence is not in the record. In order for you to prevail, would he have not had to have gone down that road, saw that the person was not in a position to go forward, said, I was just, but I needed to protect my job, and I made an affirmative decision just to let him go and pray that nothing happened. Well, guess what? It ended up, sorry, it happened. But those are the only facts I can even conceive of that might support you. And when it happened, the testimony was from Klein's drinking buddy and the superior officer that they instantly assumed that Klein was involved. That's how well-known his miscreant behavior was. But what's that? But you have put yourself in the mind of Craig. Yes, sir. And the state-created danger that Craig had a hand in was that in pulling over a driver at 2 a.m. late Saturday night, early Saturday morning, close to Atlantic City, direction of Atlantic City, he didn't discharge his duties that he had an obligation to do so. As a sworn officer sworn to uphold the law, sworn to apply the law equally to all persons, he did not. When Klein flashed his badge, he got a bye. And the defendants have argued in the district court that Klein was off-duty, he was a private citizen. Well, if that's true, then why the next business day, the following Monday morning, instantly was Klein suspended without pay and written up for official misconduct and conduct on becoming the officer? If in fact... Because he had an accident and he killed someone and it turns out he was an ingrate. Indeed. But they've tried to couch the whole badge flashing as being he was simply acting as private citizen Klein that evening, which clearly he wasn't because the moment Klein flashed his badge, he was a state actor. Clearly, forget that they may be saying that. Yeah, you're right. When he flashes the badge, that's a whole different thing. But the state created danger. This is not nype. That is a very, very difficult doctrine to apply. And had there not been any invention by Officer Greg here, the same thing theoretically may have happened and you can argue causation and maybe in terms of the pure physics of it all that the accident wouldn't have occurred because he wouldn't have been in the same place at the same time if he had a sighted principal. The same thing would have happened had there been no traffic stop at all. So that's not state created danger. The state created danger would be that somehow Craig's actions had put Klein into the situation like in nype where the person is obviously ingrated and is put onto the state highway by the police officers. That's not this case. I don't see state created danger here. But in that pedestrian case, your honor, the officer removed the individual from the situation, moved on, and then that individual voluntarily returned to the place and was struck by a car. In this situation we have a junior officer with a traffic stop and under circumstances where it's foreseeable that the occupants of the car that he can't identify yet could, speeding in a residential, quasi-residential 30 mile an hour zone at 2 a.m. on a Sunday morning, could be inebriated, drugs, who knows what. He's got an obligation as a state actor to discharge his ministerial functions. It's foreseeable when he willfully disregards that by abandoning the traffic stop because he doesn't want to know because it's a superior for whom he may or may not have heard the rumors. His obligation is to protect members of the public, motoring public, unlike in the Hull v. Feegan case where that officer, and I know your honor was involved in that, I know my adversary was involved in that case, that officer was doing mini-mart duty. He wasn't on road patrol. Craig's on road patrol. His obligation is to other motorists. That's why he's out there doing traffic stops. And... But you know, you can argue that even had Craig legally he's over the limit. But he's able to drive the car okay, he's been following him. And I don't care. He lives, I don't know how far he lives away from where he would stop. But let's assume that Craig said, look, get back in your car, go home. And don't let me see you out here again. Now that would clearly be negligence      that's why I'm not going to argue that there was no involvement or no interaction. It would be quite arguably that there was no shocking of the conscience and that it was an isolated incident. But again, the problem remains that the district  has the authority upon an official testimony of a junior officer who admitted that the deposition was unclear on a number of details and that's the basis for the appeal because anytime there are issues of fact regarding the applicability of section 1  statute there is an obligation of existing law. I see my time is up. I appreciate the opportunity to be here. Thank you. Be careful. Good morning, your honor. Jody I would like to ask a few questions. In the very beginning when I first got the pleadings and saw what the appeal was about, there is no factual dispute in this case. Why isn't there a factual dispute about the time elapsed between the traffic stop and the fatal crash? The judge said it was about an hour and a quarter. It looks to me like the net of the testimony is that it was about ten minutes. Secondly, by Klein's own deposition testimony, all of his alcohol consumption, nine beers and two shots of whiskey at two different inns were before the traffic stop. There was no drinking after the traffic stop. And the Galloway Township officers at the crash site described him as being severely drunk, staggering drunk, screaming, swearing, incoherent drunk. So that, to me, raises a question about whether a rational jury could have inferred backwards in time from the crash officer's circumstances of observation that Klein had to be driving erratically in that one mile when Craig was following him. And that, therefore, Craig would have been on notice that Klein was severely drunk and was not able to safely  car. MS. BENTON We're respectful, Your Honor. With respect to the 1 o'clock or 2 o'clock in the morning, I think that's not relevant as to when this particular incident happened. It may in fact be relevant for purposes of foreseeability. But there are four prongs to the bright test of state-created danger, which is what this case is about. And given the scenario we're not asked to consider whether the plaintiff can win, the question is whether any material fact was improperly found on summary judgment as opposed to at trial. And I'm trying to get you to focus on whether the timing of the accident wasn't  fact and wrongly found on the basis of summary judgment depositions. MS. BENTON Right. Well, it wasn't a material fact, respectfully, Your Honor. I mean, there could be facts in dispute, but they couldn't be factual.         date of  accident. I'm asking you to give me the exact date of the accident. And I'm not asking you to give me the exact date of the accident. I'm not speculating. I'm using Klein's own deposition where he describes it being, I drank it as much as I said earlier at the two bars, then I drove about five minutes, was stopped, drove another five minutes and was in the crash. And then when you combine that with the Galloway Township officers of how severely drunk he was at the moment of the accident, that suggests that he was that severely drunk 10 or 12 minutes earlier at the time he was stopped. And that suggests that there's some issues that a fact can easily             to be right. But I don't know whether that's true or not. But I don't believe that that's how  works. It doesn't matter. Even if he couldn't drive the car and Craig saw him and saw that he couldn't drive the car. It didn't matter. It didn't matter. And let Christian Guzman show people they could drive.     couldn't drive    that's all that happened. You can don't know these cars anymore. Even he doesn't have to do that. I don't think that he has the obligation to do that with respect to even going up to him as far as the investigation in the Hall v. Fagan case. We understand that that particular officer never I mean he had more evidence before him that the person was drinking and driving. Here we don't have that. He didn't go up to him. He didn't investigate. The whole Fagan case didn't have that obligation. Is there a requirement for police officers if you believe someone is speeding must you give a ticket or do you have discretion not to give a ticket? No that's discretionary your Honor and in fact every officer who was deposed in this case has said that. If you under the hypothetical given if this person had come up to the car and saw in his considered judgment that the occupant of the car was inebriated and may be beyond the legal limit is there a requirement that you arrest or at least make sure that person does not go further? I don't know. Under judicial law I think that they would have to do something to get them off the road in some way. Let me ask you another question about what Craig knew at the moment of the stop. The District Judge said accepting Craig's deposition testimony that Craig knew nothing at all about any prior bad behavior drinking or other bad behavior by Klein. But as I recall most of the sergeants testified and the public safety director testified that everybody on the force knew in detail about Klein having severe drinking problems and Klein was awaiting dismissal hearings both for possession of cocaine and for driving while drunk. So if everybody on the force knew everything, then Craig would have known about the prior drunk driving incident and the possession of cocaine, both of which happened just a month earlier in April as compared to the crash being in May. So if I'm Craig and I know all that and I see him driving erratically, it seems to me at that point a full investigation and an arrest are probably mandatory. Now, you can say, well, we don't know that Craig knew all those things, but the question is how did Craig know that he knew all those things? And the question is how did Craig know that he knew all those things? And the question is how did Craig know that he             knew           knew all those things? And the question is how did Craig know that he knew all those things? And the question is how did Craig  that he    things? And the  how did Craig know that he knew all those things? And the question is how did Craig Craig know all those things? And the question is how did Craig know all those things? And the question is what did Craig know about Craig in August of          Craig in August of 2015? And the question is August of   the question is